## JOHN A. SHEPHARD
### v.
## MILLIE A. CLARK.

*Administration—Wills—Construction of—County Court — Jurisdiction of.*

1.   A provision in a will setting forth that upon expiration of an estate for life in certain real estate it shall be sold, and its proceeds divided among persons named, carries no interest therein as land, but is a money bequest·

2.   The expectancy of such a bequest is a property right, which may be assigned or sold, and a quit-claim deed, given by such a legatee, though purporting to convey an interest in land, if intended by the parties to be an assignment of such property right, will, in equity, operate as such.

3.   County courts in this State are superior courts of general jurisdiction with respect to all matters coming within the purview of their jurisdiction as given by law. As to the subject-matter it is limited to what is given by positive law; it can not derive jurisdiction as a court, either from a will or from a decree of any other court.

4.   In addition to matters of which it has jurisdiction by positive law, such court has equitable jurisdiction of the settlement of estates and the adjustment of the accounts of executors and administrators, and may adopt equitable forms of procedure.

5.   This court declines to interfere with an order directing that the distributive share of a person named, in a certain estate less costs and solicitors' fees, be paid the grantee in a certain quit-claim deed based upon a valuable consideration, and professing to convey the interest of the grantor in the lands in question.

[Opinion filed May 24, 1890.]

APPEAL from the Circuit Court of Jersey County; the Hon. G. W. HERDMAN, Judge, presiding.

Mr. THOMAS F. FERNS, for appellant.

Mr. JOSEPH S. CARR, for appellee.

PLEASANTS, P. J.   William Keller died May 22, 1886, leaving a will, by which he devised to his wife certain lands therein described for her life, and provided that upon her death all his real estate should be sold by his executor under the direction of the County Court, and the proceeds remaining after the payment of specific legacies be divided into nine equal parts and paid, one to each of his living children, and one to the children respectively of such as should be deceased, *per stirpes*. Failing to nominate an executor, the County Court, on July 20, 1886, appointed appellant administrator with the will annexed. The personal estate was all exhausted in paying debts and supporting the widow. She died November 30, 1888, and on the 3d of December following, appellant, together with Amos W. Keller, a son of the testator, and appellee, filed a bill in equity against all the other parties entitled by the will, setting forth the facts above stated, and also that said Amos had sold his interest in the lands therein described to appellee, and praying the appointment of a trustee to carry out the provisions of the will. All the defendants appeared and answered, none denying the alleged sale by said Amos to appellee. On proof taken, identifying the lands and legatees, the court made a decree appointing appellant as such trustee, requiring him to give bond in $10,000, with sureties to be approved by the County Court, "for the performance of his duty as such trustee in accordance with the order of said County Court, and for the payment of all such moneys as may come into his hands to whomsoever said County Court may or shall from time to time direct," and ordering that "When he has fully discharged all such orders as said County Court in this behalf shall make, he shall make a full report of all his doings herein to this court;" of which decree the clerk was thereby ordered to certify a copy to the County Court.

Having given the bond so required, appellant applied, by petition to the County Court at the April term, 1889, for its direction how to proceed in the premises. An order was thereupon made prescribing the time, place, manner, terms and notice of sale, and requiring him to bring the proceeds

into that court with his report.   Sale was made May 11, 1889,
and on the 28th of the same month appellant filed his report
thereof to the County Court and asked for an order of distri-
bution of the proceeds.   Thereupon, appellee, on the same
day, filed her intervening petition to that court, setting forth
that about three years before that time she had purchased of
said Amos W. Keller all his interest in the lands described in
said will; that said Amos then executed to her a written
agreement or assignment thereof, and afterward, for greater
certainty, quit claim deeds of himself and his wife, respect-
ively, for said lands, for the consideration of $500, all of
which she had long since in good faith paid, and praying that
his share, under the will, of the proceeds of said lands be
ordered to be paid to her.

The court then made an order finding the amount due to
the several distributees and directing payment thereof to them
respectively.   So much of it as relates to the share of Amos
W. Keller, which was found to be one full share of $375.62,
is as follows :

"To Amos W. Keller one share, of which sum the court
finds that Joseph S. Carr is entitled to the sum of $23.25, as
his fee for services rendered for said Amos W. Keller in this
cause and by him assigned to said Carr for such fees, and
which the said trustee is ordered to pay to said Carr from
said share of said Amos W. Keller, and that, upon the state-
ment of said trustee that he had been garnisheed by creditors
of the said Amos W. Keller, the intervening petition of Millie
Clark is dismissed without prejudice."   The order shows that
Amos W. Keller and all the other distributees were present
in person or by attorney.   It does not appear that he or any
other opposed said intervening petition, nor was any reason
given or shown for its dismissal except the "statement" of the
trustee therein recited.   From so much of the order as dis-
missed it and directed the payment to Amos W. Keller of his
share of said proceeds, she then prayed and was allowed an
appeal.

In addition to the facts above stated, it appeared on the
trial of said appeal that on March 3, 1888, a judgment in favor
of C. W. Milnor & Co. against Amos W. Keller for $117.50

and costs, was rendered by a justice of the peace of Christian County; that on May 13, 1889, a transcript thereof was filed and proceeding thereon commenced against appellant as garnishee, before a justice of the peace of Jersey County; that on July 3, 1889, appellee was notified, as a claimant of the same fund, to appear on the 6th and show her right, if she had any thereto; that she did not so appear, and judgment was rendered in favor of Amos W. Kellar for use of C. W. Milnor & Co. against appellant as garnishee, for $130.20; that from said judgment appellee here took an appeal to the Circuit Court, and that said appeal was still pending and undetermined.

John W. Clark testified as follows: "I am the husband of the complainant. This claim is her own property. I did all the business about it for her. I know all the facts. More than two years before the death of Mrs. Dorothy Kellar (widow of the testator) my wife and Amos W. Kellar entered into a written agreement in which he agreed to sell his interest in his father's estate; which agreement was carried out and consummated after the death of said Dorothy Kellar by Amos W. Kellar on December 3, 1888, by executing and delivering to Millie A. Clark the deeds recorded on page 523 of book 6 of Jersey county records. These deeds were made in pursuance of the written agreement and contract, and we supposed were all right."

The record states that "all that testimony of witness attempting to alter, or modify, or add to the terms of the two deeds offered in evidence, were objected to as incompetent and illegal." On cross-examination the witness stated that his wife had paid Amos W. Kellar as consideration for said sale $500,—being $300 in cash, a horse, and the residue by the assumption of debts he was owing.

Of the deeds referred to, one from said Amos W. Kellar dated and acknowledged December 3, 1888, for the expressed consideration of $500, "conveys and quit claims" to appellee all his interest in the lands therein described, being the same that are described in the will, and the other, acknowledged on the same day, is from his wife and of the same tenor.

Upon this evidence the Circuit Court held that appellee

was entitled in equity to the distributive share of Amos W. Kellar, subject to the payment of the costs and of the lien of her solicitor for fees, and ordered the trustee to pay the same accordingly; from which order he took this appeal.

We are inclined to affirm it. According to well known rules of construction, the descendants of William Kellar acquired no land by his will. What he thereby gave them was money only. Amos W. Kellar having no estate or interest in the land as land, his quit claim deed to appellee conveyed none; but he had an interest in it as the means and the only means of producing the money bequest to which, when produced, he would be entitled. That his expectancy of that bequest was a property right which he could assign or contract to sell, and that his quit claim deed, though purporting to be of an interest in land, if intended by the parties to it as an assignment of that property right, would in equity operate as such, are propositions which seem to be settled by the case of Ridgeway v. Underwood, 67 Ill. 428 *et seq.*

That it was so intended is clearly proved by the testimony of Clark and the documentary evidence. He testified to an agreement in writing by Kellar to sell to appellee his interest in his father's " estate," and received the consideration therefor before the judgment for Milnor & Co. against him was rendered; and that in pursuance of that agreement and for the purpose of executing it on his part, the deed was made, after his mother's death, until which event his interest in the estate was not vested. The objection made to this evidence was not valid. It was not that the writing was not produced nor its absence accounted for, but solely that it was an attempt to alter, modify or add to, the terms of the deed. It tended to do neither, but simply connected it with an antecedent transaction tending to show the intention in executing it. The terms of the deed, purporting to convey an interest in land, were left just as they were. But certainly the intention might have been by those terms to pass the grantor's interest in the proceeds of the land; and this evidence clearly tended to show it was. In the Ridgeway case, *supra*, which in this respect was like the one here, the deeds purported to

Shephard v. Clark.

convey all right, title, interest, claim and demand, whether in possession or expectancy, to the grantor's part, being one of seven heirs (not "etc.," as counsel put it, but as the court say) "in and to the land" in question; but to give effect to the intention they were held to be an equitable assignment of the interest in the proceeds. Without the evidence of Clark, the intention here is put beyond a doubt as against Amos W. Kellar and this appellant, by the bill they filed jointly with appellee for the appointment of a trustee and the proceedings thereon. The trust they thereby sought to have executed was the sale of the land and distribution of its proceeds. They expressly asserted her interest in the execution of that trust, as derived from this deed, that she took the place in interest of said Kellar by virtue of his assignment so made.

The court must have recognized this substitution and appointed the trustee in view of her interest as well as that of the other parties. Counsel say no evidence of such substitution or assignment was taken by the master or produced to the court. But there was no need of any evidence other than the bill. Both the parties to the alleged assignment averred the fact, and that conclusively established it as between them. Nobody denied the averment. There was nothing shown, in law or fact, to prevent the assignment or to invalidate it when made. Milnor & Co. had no lien upon the interest assigned, nor any right thereto as against appellee. Appellant accepted the trust and proceeded to execute it, with actual notice of the assignment. That made him, in equity, the debtor or trustee of appellee to the amount of Amos Kellar's share under the will, and would have protected it in his hands against garnishment by creditors of Kellar.

When he applied for an order of distribution, the fact of the assignment was properly brought to the attention of the County Court by the intervening petition of the assignee. The assignor was present by his attorney and did not dispute the fact, nor make any objection to the order she asked. There was nothing before the court which should have prevented its allowance, unless it was a want of power to make it. The mere statement of the trustee that he had been gar-

nished by creditors of Kellar was not a sufficient legal reason for dismissing her petition, and had the facts, as they appear in this record, been properly before it, the court could not have properly held them sufficient. But on behalf of appellant it is contended that the court had no power to allow the petition and make the order asked; that its jurisdiction was limited to questions of property arising out of its devolution on its owner's death, and did not extend to the question of an assignment of an heir's or legatee's interest, or to any claim against an heir or legatee. Some authorities said to support these propositions are cited from several other States, but none from our own.

County courts in this State are superior courts of general jurisdiction with respect to all matters coming within the purview of their jurisdiction as given by law. Matthews v. Hoff, 113 Ill. 96, and cases there cited. But as to the subject-matter it is limited to what is given by positive law. It could derive none, as a court, either from a will or from a decree of any other court. Leman v. Sherman, 117 Ill. 657. By positive law it has jurisdiction " in all matters of probate, settlements of estates of deceased persons * * * and in proceedings by executors, guardians and conservators for the sale of real estate for the purposes authorized by law." And in the settlement of estates and the adjustment of the accounts of executors and administrators it has equitable jurisdiction and may adopt equitable forms of procedure. Millard v. Harris, 119 Ill. 198; In re Corrington, 124 Ill. 366.

Just what matters are embraced in the general terms " probate matters," " settlements of estates of deceased persons" and "adjustment of accounts of executors and administrators," it may be difficult to determine; but in any view that can be reasonably or plausibly taken, it would seem that to the tribunal clothed with jurisdiction of them, some equitable power must appertain. By the estate of a deceased person is meant the property of all kinds belonging to such person at the time of his death. To "settle" it, would seem to involve its ascertainment, discovery, collection and disposition to those legally or equitably entitled. All this may have to be done by per-

sons appointed by the deceased, or by the tribunal having jurisdiction, and under its direction. The entire estate may have to be converted into money and disposed of to persons unknown to the deceased in his lifetime, or to the appointee and to the tribunal appointing him, at the time of appointment. The persons entitled may be designated by the will of the deceased, or ascertained' by the law, upon other facts duly shown. The right, once vested in persons so ascertained, may pass to others before the estate is settled, by their death, or marriage, or insolvency, or contract—events and transactions never contemplated by the deceased—and it may be purely equitable.

Manifestly, then, the court having jurisdiction to ascertain these possible rights and direct the disposition of the estate in accordance with them, must have equitable powers. It is conceded that some of these questions are within the jurisdiction of the County Court, as given by law, and the equitable powers required for their determination appertain to it. But it is insisted that no such question is here involved; that appellee was neither an heir, a legatee nor a creditor of the estate; that she is a stranger to it, and her claim is against a legatee and not against the estate; that the trial of the right as between her and Amos W. Kellar is not involved in the settlement of the estate; that the trustee must pay as directed by the will, and can not be involved in controversies between the *cestui que trust* or legatee and those claiming against him, and that the County Court could not entertain jurisdiction of such a controversy.

The question so discussed by counsel is perhaps not free from difficulty. We are not aware of any authoritative construction of our statute directly bearing upon it. But we apprehend it is not the question before us. The record here presents a case of undisputed assignment by the legatee. He himself averred it and no one denied it. There was no controversy between himself and appellee, nor between appellee and his creditors. In legal contemplation he was present when her claim was presented, and admitted her right as derived from him by his own act. The question, then, is

whether the County Court could recognize his right to dispose
of his property or money in the hands of the trustee, and his
actual, undisputed disposition of it. Would not an order to
pay appellee as his assignee have been in effect an order to
pay him, and, therefore, a substantial execution of the trust
as to him?

It seems to be conceded that appellant, though appointed
by decree of the Circuit Court, simply took the place of an
executor; that it was nevertheless a probate matter, and the
jurisdiction of the County Court, derived from the statute,
was just what it would have been had he been nominated as
executor by the will. It had jurisdiction, then, to make an
order of distribution and to adjust the account of the trustee.

To that end it must ascertain and identify the persons
entitled under the will. But if, it further appeared that the
interest of any such had passed by operation of law, or by their
own undisputed and lawful act, we see no impropriety or
usurpation in its finding the fact and ordering payment to the
person really entitled. Had the trustee himself shown to
the court a certified copy of an order of a court of competent
authority, adjudicating Amos W. Kellar a bankrupt and ap-
pointing his assignee in bankruptcy, we apprehend it would
have been proper to direct the payment of his share under
the will to such assignee. So, if he had presented an assign-
ment by him of his interest, with a power of attorney to
receive and receipt for it. In Crownover v. Bamburg et al.,
2 Ill. App. 162, where an administrator was garnisheed as to
the share of a distributee, but before service of the writ had
virtually accepted an order from such distributee to pay it to
another party, it was held that this was "an entire appropria-
tion of the funds beyond the reach or control of the distributee,
and therefore the garnishee should have been discharged,
being no longer his debtor." If the order of distribution
makes the administrator amenable to garnishment as the
debtor of the distributee (Bartell v. Bauman, 12 Ill. App.
450), justice to him and to the rightful claimant would require
that the court authorized to make the order should have power
to ascertain the party really entitled, and to direct the pay-

ment to be made accordingly, or if there was a controversy as to the person so entitled, which for any reason it could not settle, that it should withhold the order of distribution as to the share so in dispute, until it was settled by competent authority.

We think the quit claim deed of Amos W. Kellar to appellee was an equitable assignment of his interest in the proceeds of the land therein described, and authority to her to receive the same. The circumstances shown make a case widely differing from that of Long v. Long, 118 Ill. 638, to which we have been referred since this cause was submitted.

There, William Long conveyed to a son of a deceased son, certain land, and received from the latter a quit claim deed of other land, and the question was whether this deed, of itself, or with the other evidence produced, proved a release or agreement for a release by the grantor, of all interest in the estate of his grandfather, upon his decease, personal as well as real. The court say (p. 648): "When a conveyance has been made between parties *sui juris*, it will be presumed, in the absence of anything to the contrary, there was an antecedent agreement to deliver just that kind of an instrument and no other. Hence, it is altogether illogical to assert, as is done here, that an ordinary quit claim deed for a certain specifically described tract of land affords any evidence of an intention on the part of the grantor to release an expected inheritance from the grantee." And the court further found that in that case the presumption obtained, there being nothing shown that was sufficient to overcome it. In the case at bar, a son, for a valuable consideration, quit-claimed his interest in certain lands, of which his father had died seized, and which he knew were, by his father's will, to be sold by his executor, who was thereby directed to divide the proceeds among his children. Since the deed would be wholly inoperative if not to transfer his interest in those proceeds, equity gives it that effect. And that such was his intention was clearly shown by other facts. It was an authority from him to her, as full and formal as he could give, to receive it in his stead. The trustee had so recognized it. The other legatees

had notice of it and of her claim under it, and none objected. If the County Court could have judicially understood that Milner & Co. were contesting it in another court, its order forestalled the judgment of that court, and ignored their claim as well as that of appellee, and the question of the trustee's contingent liability; for it not only dismissed the petition of appellee, but directed that the fund be paid to Amos W. Kellar.

We are clearly of opinion that upon the facts shown, appellee was justly entitled to it, and therefore that the order of the Circuit Court was right. Inclining to think it was also legal, it will be affirmed.

*Order affirmed.*